**NOW, Plaintiffs,**

**v.**

**OPERATION RESCUE, Defendants.**

**Civ. A. No. 89–2968–LFO.**

United States District Court, District of Columbia.

July 31, 1990.

Laurence J. Eisenstein, Steven Semeraro, Richard H. Seamon, Covington & Burling, Sarah E. Burns, Alison Wetherfield, NOW Legal Defense & Educ. Fund, Washington, D.C. and New York City, for plaintiffs.

C. Peter Thomas S. Cornell, Amshoff & Amshoff, Louisville, Ky., for Operation Rescue and Randall Terry.

Richard L. Swick, Washington, D.C., for D.C. Project, Susan Odom, Project Rescue, and Clifford Gannett.

Jay Allan Sekulow, Atlanta, Ga., for Veterans Campaign for Life, Michael McMonagle, Rev. Patrick J. Mahoney, Joseph Foreman, and James M. Henderson, Jr.

## MEMORANDUM

OBERDORFER, District Judge.

Pursuant to a Preliminary Injunction entered on November 8, 1989, plaintiffs filed a petition seeking contempt sanctions against defendants Operation Rescue, Project Rescue, Clifford Gannett, Patrick Mahoney, and Michael McMonagle, and respondents Joseph Foreman and Susan Odom. An evidentiary hearing was held on May 15–18, 1990. For the reasons stated below, an accompanying Order will cite Operation Rescue, Patrick Mahoney, Clifford Gannett, Joseph Foreman, and Susan Odom for civil contempt of the November 8, 1989 injunction.

I.

On November 8, 1989, the Court issued a Preliminary Injunction that, *inter alia,* prohibited Operation Rescue, Patrick Mahoney, Clifford Gannett, "and persons acting in concert with them" from "trespassing on, blockading, impeding or obstructing access to or egress from" various named clinics at which abortions and other family planning services were performed. *See NOW v. Operation Rescue,* 726 F.Supp. 300, 305 (D.D.C.1989). The injunction also enjoined such parties from "inducing, encouraging, or directing others" to engage in prohibited activity. *See id.* The preliminary injunction was amended on November 9, 1989 to cover certain additional clinics. As amended, the injunction covered the Hillcrest Women's Surgi-Center ("Hillcrest Clinic"), the Washington Surgi-Clinic, and the Capitol Women's Center, among others.

On January 26, 1990, a Permanent Injunction was issued. The Permanent Injunction prohibited the same conduct, but covered clinics throughout the District of Columbia. In ruling in favor of plaintiffs on the merits, the Court found that defendants had conspired together to plan physical blockades of clinics in the District of Columbia during November 11–18, 1989.

Based on the November 1989 blockades, plaintiffs sought a finding of civil contempt, and a hearing was held on May 15–18, 1990. Defendants Operation Rescue, Randall Terry, Project Rescue, and Clifford Gannett were represented by counsel at that hearing. Defendant Patrick Mahoney appeared pro se. Defendant Michael McMonagle and respondents Joseph Foreman and Susan Odom neither appeared nor were represented by counsel at the hearing. Plaintiffs presented testimony from eleven witnesses, as well as deposition tes-

timony of two persons and one affidavit in lieu of testimony. Plaintiffs introduced thirty-six exhibits into evidence, including a video tape showing scenes from the November blockades. Patrick Mahoney testified on his own behalf and introduced one exhibit. None of the other defendants, however, produced any evidence.

## II.

■ As an initial matter, defendants Clifford Gannett and Project Rescue have argued that they are being subjected to criminal rather than civil contempt proceedings because the sanctions sought by plaintiffs are punitive in nature. The distinction between civil and criminal contempt was summarized by the Second Circuit:

> The two species of contempt are distinguished by determining the purpose for which a sanction was imposed. A sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party is civil. A sanction imposed to punish for an offense against the public and to vindicate the authority of the court, that is, not to provide private benefits or relief, is criminal in nature.

*New York State NOW v. Terry,* 886 F.2d 1339, 1350–51 (2d Cir.1989) (citations omitted). Civil contempt sanctions, therefore, may be imposed for two reasons: (1) to compensate an aggrieved party for damages resulting from the contempt; and (2) to coerce future compliance with the injunction. Compensatory sanctions may include attorneys fees. *See Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). Coercive contempt sanctions must be conditional, *i.e.* the contemnor must be able to avoid the sanctions by purging himself of the contempt. *See* C. Wright & A. Miller, Federal Practice and Procedure § at 586 (quoting *Lance v. Plummer,* 353 F.2d 585, 592 (5th Cir.1965), *cert. denied,* 384 U.S. 929, 86 S.Ct. 1380, 1445, 16 L.Ed.2d 532 (1966)).

The sanctions sought by plaintiffs fall within these parameters. Plaintiffs seek only (1) compensation for damages caused by the contempt, (2) attorneys fees incurred as a result of the contempt proceedings, and (3) future fines designed to coerce compliance with the permanent injunction. These proceedings, therefore, are civil in nature.

■ Defendants Gannett and Project Rescue also challenge the validity of the preliminary injunction they are alleged to have violated. Such a challenge is inappropriate in a contempt proceeding. Although an adjudication of civil contempt will fall if the underlying injunction is subsequently held invalid, that does not authorize the alleged contemnor to challenge the validity of the injunction at the contempt hearing. *See, e.g., Pennhurst State School & Hosp.,* 673 F.2d 628, 637 (3d Cir.1982) (stating the "settled rule that the merits of the underlying order may not be called into question in a post-judgment civil contempt proceeding" (citing *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929).

Defendants are entitled to challenge this court's jurisdiction to enter the preliminary injunction. *See Commodity Futures Trading Comm. v. Nahas,* 580 F.Supp. 245 (D.D.C.), *vacated,* 738 F.2d 487 (D.C.Cir. 1983). Any jurisdictional challenge, however, is groundless. In issuing the preliminary injunction, this court exercised pendent jurisdiction based on a finding that plaintiffs' "federal claims are not insubstantial." *See NOW,* 726 F.Supp. at 304. That finding has been borne out by subsequent proceedings as plaintiffs have prevailed on their federal claims in this case, as well as in related cases. *See* Memorandum, today; *NOW v. Operation Rescue,* 726 F.Supp. 1483 (E.D.Va.1989).

## III.

■ The relevant legal standards for this civil contempt proceeding are not in dispute. Movants for civil contempt must show by clear and convincing evidence that a court order has been violated. *See, e.g., Washington–Baltimore Newspaper v. Washington Post,* 626 F.2d 1029, 1031 (D.C.Cir.1980). The violation need not be intentional or willful: "the intent of the recalcitrant party is irrelevant." *N.L.R.B.*

*v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981).

 Movants need not show that parties sought to be held in contempt had actual notice of the order. *See* Fed.R.Civ. Proc. 65(b); *Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 109 (2d Cir. 1987). In contrast, movants must show that any non-parties sought to be held in contempt had notice of the order. *See Douglas v. First National Realty Corp.,* 543 F.2d 894, 897 (D.C.Cir.1976). In proving notice, it is not necessary to show formal service of the order on the non-party. *See* Fed.R.Civ.Proc. 65(d). Moreover, notice may be proved from circumstantial evidence. *See Douglas,* 543 F.2d at 897.

## IV.

 Plaintiffs have submitted proposed findings of fact with supporting citations to the evidentiary record. Although defendants have responded to plaintiffs' proposed findings, defendants have not submitted alternative proposed findings, nor have they materially traversed most of the findings proposed by plaintiffs. Narrative findings in favor of plaintiffs follow.

### A.

There is no dispute that the alleged contemnors had either actual or constructive notice of the injunction. As parties to the underlying case, Operation Rescue, Project Rescue, Clifford Gannett, Patrick Mahoney, and Michael McMonagle are presumed to have notice of the preliminary injunction. Moreover, Joseph Foreman and Susan Odom both admitted that they are national leaders of Operation Rescue. Accordingly, knowledge of the injunction must be imputed to them. *See Dole Fresh Fruit,* 821 F.2d at 109 (finding that Rule 65(d) does not require actual notice to a party's "officers, agents, servants, employees [or] attorneys").

### B.

The Preliminary Injunction was premised upon a finding that defendants planned to conduct blockades on certain unspecified abortion clinics on November 11, 17, and 18, 1989. *See NOW v. Operation Rescue,* 726 F.Supp. 300, 301 at ¶ 2. Defendants indeed carried out the threatened blockades. On November 11, 1989, a blockade took place at the Hillcrest Clinic, blocking all access to the clinic for several hours. Blockades also occurred on November 17, 1989 at the Washington Surgi–Clinic and at the Capital Women's Center, blocking all access to the clinics and cutting off traffic on surrounding streets.

Plaintiffs have demonstrated by clear and convincing evidence that Operation Rescue, Clifford Gannett, Michael McMonagle, Joseph Foreman, and Susan Odom violated the Preliminary Injunction at the November 1989 blockades and, therefore, should be held in contempt. Plaintiffs have not, however, provided clear and convincing evidence that Patrick Mahoney violated the Preliminary Injunction. In addition, in a separating ruling on plaintiffs' motion for summary judgment, this Court found, based on principles of *res judicata,* that Project Rescue is not a suable entity. *See* Memorandum. Project Rescue, therefore, cannot be found in contempt.

The following findings are based on clear and convincing evidence:

1. Operation Rescue has violated the Preliminary Injunction, both through its own actions and the acts of its officers and leaders. As an initial matter, Operation Rescue claims that it is not an entity, but merely an alter ego of Randall Terry. This contention is unsupported by the record. Operation Rescue has leased office space, hired employees and consultants, maintained bank accounts, and sold merchandise with its name on it. Moreover, both Joseph Foreman and Susan Odom have indicated that they hold leadership roles in Operation Rescue. Most notably, Foreman has stated that he was the "national coordinator" and "acting director" of Operation Rescue. Operation Rescue and Randall Terry, therefore, are separate parties, one an entity, the other its chief executive officer.

Operation Rescue was the moving force behind the November 1989 blockades. Patrick Mahoney and Clifford Gannett stated

that Operation Rescue "organized and sponsored" the blockades. The blockaders were coordinated and given instructions by leaders who wore yellow ponchos with the words "Operation Rescue" printed on the back. Moreover, Operation Rescue spent in excess of $50,000 on the November blockades. This evidence clearly and convincingly demonstrates that Operation Rescue induced, encouraged, and directed others to blockade clinics in direct violation of the Preliminary Injunction.

2. Clifford Gannett also violated the Preliminary Injunction. At the November 17, 1989 blockade of the Capitol Women's Center, Gannett was arrested for sitting down and blocking the entrance to the clinic. He was charged and found guilty in the District of Columbia Superior Court. Gannett has not disputed or traversed this conviction. In addition, although not direct evidence of a violation of the injunction, Gannett assumed a leadership role in the November 11 blockade and in a blockade conducted on January 22, 1990 at another clinic covered by the injunction.

3. Joseph Foreman violated the injunction by physically blocking access to the Hillcrest Clinic on November 11, 1989. He was arrested for, charged with, and found guilty of "incommoding" for sitting down in front of the entrance to the clinic. In addition, Foreman's own statements and his appearances at other blockades and rallies evidence his leadership role in Operation Rescue and its related activities.

4. Susan Odom violated the injunction by physically blocking the entrance to the Capitol Women's Center on November 17. For this conduct, she was arrested and eventually found guilty of "incommoding." Odom also violated the injunction by encouraging and directing other blockaders at the Capitol Women's Center on November 17.

5. Michael McMonagle violated the injunction both by directing blockaders at the Hillcrest blockade and by himself physically blocking access to the clinic. McMona-

gle was arrested on November 17, 1989 at the Hillcrest clinic after he blocked the clinic entrance and refused to move. The "Field Arrest Form" introduced by plaintiffs indicates that McMonagle paid a $50 fine.

6. Plaintiffs were not able to demonstrate by clear and convincing evidence that Patrick Mahoney violated the Preliminary Injunction. Mahoney admits that he was the "Event Coordinator" for the D.C. Project, "under the authority of the leadership of Operation Rescue.[1] In that capacity, Mahoney admits that he was responsible for, *inter alia*, registration of D.C. Project Participants in hotels, contacting local rescue groups to stimulate interest, and generally coordinating promotion of the D.C. Project. Mahoney received approximately $11,000 as compensation from Operation rescue.

Mahoney denied, however, that he participated in coordination of the blockades themselves. In fact, the evidence indicates that Mahoney continually attempted to distance himself from the illegal activities of the blockaders. Mahoney was not arrested, nor did any witness testify that they ever saw him cross police lines at the blockades.

The strongest evidence presented by plaintiffs was the testimony of Loretta Kane. Kane testified that, at the Hillcrest blockade on November 11, 1989, people who she assumed were "runners" seemed to be carrying messages from Mahoney and Gannett to the blockaders behind the police lines. Kane, however, admitted that she could not hear what Mahoney said either to Gannett or to the supposed runners. Even assuming that Kane's testimony establishes that messages were being passed between Mahoney and the blockaders, there is no clear and convincing evidence that these messages "induced, encouraged, or directed" others to violate the injunction.

Plaintiffs also argue that Mahoney violated the Preliminary Injunction through his conduct as event coordinator, for exam-

---

**1.** The "D.C. Project" refers to all the events surrounding the November blockades organized by

Operation Rescue.

ple, in registering the D.C. Project participants and in obtaining hotel rooms for them. Mahoney argues, however, that he was participating in lawful activity and was not "inducing, encouraging, or directing" the participants to engage in illegal activities. Mahoney's reading of the injunction is strained, but at least plausible. In light of Rule 65(c)'s requirement that an injunction be "specific in terms" and "describe in reasonable detail ... the act or acts sought to be restrained," Mahoney will not be found in contempt for his actions in November 1989. This conclusion is buttressed by Mahoney's obvious efforts to comply with the injunction and his conscientious, but misguided, belief that his actions were protected by the first amendment.

This finding does not lessen the fact that Mahoney's acts obviously facilitated the illegal conduct of the over 700 people who blockaded clinics and were arrested as part of the D.C. Project. Mahoney's conduct is particularly troubling given his admission that he knew that many of the people he was helping register planned to conduct illegal blockades. To prevent future misinterpretations of the injunction and to prohibit the sort of conduct engaged in by Mahoney, the Permanent Injunction has been amended to also prohibit "aiding or abetting" others in their efforts to illegally blockade abortion clinics in the District of Columbia. Repetition by Mr. Mahoney of his conduct in November 1989, or conduct resembling it would violate the injunction as it is being amended.

### V.

■ Plaintiffs are entitled to compensation for the damages caused by the contemnors violations of the injunction. Representatives of two of the blockaded clinics testified that the blockades effectively prevented patients from using the clinic on that day. As a result, the clinics had to pay their staff for, in essence, not working that day. The payroll costs to the Hillcrest Clinic were $1680; the Capitol Women's Center incurred approximately $533. In addition, Dr. Julius Fogel, the director and owner of the Washington Surgi–Clinic, testified that when his clinic was blockaded

the blockaders sat on a row of bushes in front of the clinic, killing the bushes in the process. Plaintiffs introduced into evidence an estimate of $3800 for repair of the bushes. Defendants did not introduce any evidence that this estimate was not fair and reasonable.

The court finds that the following damages were caused by the blockading activity encouraged and directed by contemnors: $1680 to the Hillcrest Clinic; $533 to the Capitol Women's Center; and $3800 to the Washington Surgi–Clinic. Accordingly, contemnors are jointly and severally liable for the foregoing compensatory damages. The contemnors are also jointly and severally liable for plaintiffs attorneys' fees incurred as a result of this contempt proceeding. The amount of such fees will be determined at a later date, upon submission of appropriate affidavits by plaintiffs' counsel.

### VI.

■ The District of Columbia laws against trespass and public nuisance are designed to prevent the conduct engaged in by the contemnors and many other participants in the D.C. Project. This Court's Preliminary Injunction was premised upon plaintiffs' showing that those laws would not deter defendants from their planned illegal conduct. As this contempt proceeding has demonstrated, however, the Preliminary Injunction proved insufficient to deter the illegal conduct. Accordingly, in order to coerce compliance with this Court's injunction and the laws of the District of Columbia, it is necessary to fix substantial fines for future violations of the injunction. Moreover, as additional deterrence, and because plaintiffs have demonstrated that defendants' activities cause damage to the blockaded clinics, any future fines will be payable to the clinic that was the subject of the illegal blockade.

Because these fines are designed to coerce future compliance with the injunction, the fines must be related to the financial resources of each defendant. Evidence submitted by plaintiffs indicates that Oper-

ation Rescue has substantial financial resources. Operation Rescue concedes that in 1989 it collected at least $777,000 in cash and checks. In addition, Operation Rescue spent at least $50,000 on the D.C. Project. Accordingly, to deter future conduct in violation of this Court's injunction and to compensate the aggrieved clinic if a blockade does occur, a $50,000 contempt sanction payable to the blockaded clinic will be imposed upon Operation Rescue in the event that it again violates the injunction. Furthermore, each succeeding time that Operation Rescue violates the injunction, an additional fine in the same amount will be imposed.

As to the individual contemnors, the evidence shows that Clifford Gannett earned $42,164.90 in 1989. Because they did not respond to plaintiffs' discovery requests, little is known about the financial resources of Joseph Foreman, Susan Odom, and Michael McMonagle. The evidence indicates, however, that Foreman, Odom, and McMonagle are national leaders of Operation Rescue. In addition, the evidence shows that Gannett is a leader of a local rescue organization. Accordingly, in order to deter future violations of this Court's injunction, and to compensate the injured party if such blockades do occur, a $5,000 contempt sanction payable to the blockaded clinic will be imposed upon Clifford Gannett, Joseph Foreman, Susan Odom, or Michael McMonagle in the event that such contemnor again violates the injunction. Furthermore, each succeeding time that any of these individuals violates the injunction, the amount of the sanction to that individual will be doubled.

Finally, with respect to Patrick Mahoney, the Court finds that a monetary sanction is necessary to deter future violations of the injunction, particularly in light of the injunction's revision to prohibit "aiding and abetting" illegal blockades. Because Mahoney did not actually violate the Preliminary Injunction, a sanction lesser than that established for the individual contemnors is appropriate. Accordingly, in order to deter future violations of this Court's injunction, and to compensate the injured party if such blockades do occur, a $2,500 contempt sanc-

tion payable to the blockaded clinic will be imposed upon Patrick Mahoney in the event that he again violates the injunction. In addition, however, because of the importance of his role as facilitator, and now knowing that future conduct is prohibited, each succeeding time that Mahoney violates the injunction, the amount of the sanction will be tripled.

## VII.

In short, the preliminary injunction forbade defendants from interfering with ingress and egress to specified privately owned clinics which dispensed lawful medical services. Defendants at times and places certain violated that injunction by interfering with such ingress and egress in ways that directly injured plaintiffs. Defendants have not foresworn repetition of such contumacious and injurious conduct. As the Supreme Court has authoritatively stated in a related context of violations of a preliminary injunction defied by defendants:

> The rules of law ... followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. [Citation omitted.] This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom.

*Walker v. City of Birmingham*, 388 U.S. 307, 320–21, 87 S.Ct. 1824, 1832, 18 L.Ed.2d 1210 (1967) (criminal contempt lies for violation of a preliminary injunction where defendants violated injunction instead of seeking relief on appeal).

Accordingly, one accompanying Order will impose compensatory damages for contumacious violations of the preliminary injunction, enter a permanent injunction, de-

fine further sanctions for any future violations of the permanent injunction. Another accompanying order schedules a further hearing on an award of attorneys' fees to plaintiffs for the fees and costs incurred in obtaining the injunctions and in enforcing the preliminary injunction.

## CITATION FOR CONTEMPT

For the reasons stated in the accompanying Memorandum, it is this 30th day of July, 1990, hereby

ORDERED, ADJUDGED and DECREED: that Operation Rescue, Clifford Gannett, Joseph Foreman, Susan Odom, and Michael McMonagle violated the Preliminary Injunction entered on November 8, 1989; and it is further

ORDERED: that upon those violations, Operation Rescue, Clifford Gannett, Joseph Foreman, Susan Odom, and Michael McMonagle are found in contempt; and it is further

ORDERED: that Operation Rescue, Clifford Gannett, Joseph Foreman, Susan Odom, and Michael McMonagle are jointly and severally liable for the following damages: $1680 to the Hillcrest Clinic; $533 to the Capitol Women's Center; $3800 to the Washington Surgi–Clinic; and plaintiffs' reasonable attorneys fees incurred as a result of these contempt proceedings, in an amount to be determined later.