SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

CURRENT FINANCIAL SERVICES, INC., et al., Defendants.

Civ. A. No. 91–3089 SSH.

United States District Court, District of Columbia.

Aug. 28, 1992.

---

Thomas C. Newkirk, Ellen B. Cohn, Bruce A. Hiler, Julie K. Lutz, Jonathan I. Golomb, William E. Morse, Petrna M. Burnham, SEC, Washington, D.C., for plaintiff.

John P. Sweeney, Gregg L. Bernstein, Ann M. Sheridan, Miles & Stockbridge, Baltimore, Md., for defendant Librandi.

John D. Wogan, Monroe & Lemann, New Orleans, La., for defendants Current Financial, Richard Hope, Goff, Otis Hope and Alpha Inv.

David W. Benner, pro se.

Douglas R. Rayburn, pro se.

Dougald D. McMillan, James V. Grevelle, Dallas, Tex., for defendants Strength Financial, Wilson, Victory Financial and Worley.

John A. Chalk, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., for defendants Med–Fac and Hammond.

James A. Backstrom, Anthony J. Guida, Jr., Buchanan Ingersoll Prof. Corp., Philadelphia, Pa., for defendants American Equity and Kennison.

## OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff Securities and Exchange Commission (SEC) applied for an order of civil contempt against defendants Keith Hammond and Med–Fac Investments, Inc. (Med–Fac), and non-parties John Allen Chalk and the MFI Liquidation Trust (MFI Trust). On July 8, the Court directed those four parties (respondents) to show cause why they should not be held in civil contempt for violating its December 5, 1991, temporary restraining order (TRO) and December 18, 1991, preliminary injunction. The Court held a hearing on the SEC's application for civil contempt on August 13, 1992. For the reasons that follow, the Court cites respondents for civil contempt and orders them to purge the contempt within 30 days.

### I. The Court's Orders

The SEC alleges in its complaint that Med–Fac, Hammond, and fifteen other defendants violated the registration and antifraud provisions of the federal securities laws.[1] On December 5, 1991, the Court granted the SEC's unopposed application for a TRO prohibiting further securities violations and for an Order freezing the assets of certain defendants, including the assets of Med–Fac.

The TRO and its freeze order provided in pertinent part:

[T]he defendants Med–Fac, ... [and] Hammond ... their subsidiaries, officers, directors, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise ... shall hold and retain within their control, and otherwise prevent any disposition, transfer or dissipation whatsoever of any and all assets under the direct or indirect control of defendant Med–Fac, ... or in which [it] holds a direct or indirect beneficial interest (including without limitation, bank, brokerage, and money market accounts in the names of any of these defendants, and any lock boxes); provided, however, that if applicable, any of the defendants subject to this Freeze Order may collect on accounts receivable presently held in inventory, and any and all funds received shall be subject to the provisions of this Freeze Order. (December 5, 1991, Order ¶ IV.)

The TRO and its freeze order also required Med–Fac to provide an accounting of assets held in its name or for its direct or indirect beneficial interest.[2] (December

---

1. Defendants allegedly violated sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C.A. § 77e(a) and (c), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.

2. The accounting provision of the Order required Med–Fac to identify:
   (a) all securities, funds, and other assets valued at $5,000 or more ... held in its name or for its direct or indirect beneficial interest, stating the location and amount and including

5, 1991, Order ¶ VI(a)). On December 18, the Court entered a preliminary injunction with the consent of defendants Med–Fac and Hammond. The preliminary injunction incorporated the asset freeze provision of the December 5 Order and extended it until final disposition of the case. (December 18, 1992, Order ¶ IV.)

## II. Respondents' Actions

Prior to filing the complaint, the SEC notified defendants Med–Fac and Hammond of its intention to seek a TRO and its freeze order on November 29, 1991.[3] On December 2, Hammond consulted with Med–Fac's counsel, respondent Chalk.[4] On Chalk's advice, Hammond and Med–Fac adopted a plan to liquidate Med–Fac and to create the MFI Trust.[5] The stated purpose of the plan was "for the assembling and marshalling of the assets of [Med–Fac], the paying of, or making adequate provisions for, the creditors and debtors of the Corporation, and the apportioning of the remaining assets among the shareholders." (Plaintiff's ex. G, at 1.)

Hammond executed the MFI Liquidation Trust Agreement creating the trust on behalf of Med–Fac and designating himself as trustee. (Plaintiff's ex. I.) Med–Fac agreed to convey to the MFI Trust more than $25,000 in cash and its interest in certain accounts receivable, which it valued

in excess of $200,000. Hammond executed an assignment of the accounts receivable from Med–Fac to himself as trustee for the MFI Trust, and, on December 3, he transferred the cash from Med–Fac's account to an account for the MFI Trust. (Plaintiff's exs. J and K.) The MFI Trust was created and funded prior to the entry of the TRO on December 5. By express provision of the Trust Agreement, Med–Fac retained the power to revoke the trust at any time.[6] (Plaintiff's ex. I at 1.) The purpose of the Trust was to "assur[e] the return to [Med–Fac's] creditors of all cash advanced to [it] for use in its business operations." (Id.) Therefore, the Trust Agreement empowered Hammond to distribute its assets to eleven of Med–Fac's creditors, who were listed in an exhibit to the Trust Agreement. (Id. at 2 & ex. B.) Hammond also was authorized to discriminate among the listed creditors.[7] (Id. at 3.)

From December 9, 1991, through June 18, 1992, Hammond, as trustee of the MFI Trust, disbursed more than $60,000 from the Trust to eight of Med–Fac's creditors. (Plaintiff's exs. E, K, L, and M.) In addition, Hammond diverted $16,943 from the MFI Trust, by permitting direct payments from Med–Fac's debtors to its creditors. (Plaintiff's ex. K.)

the name, address, telephone number, account number(s), and amount of money or description of other assets for each repository of assets,
(b) each account (including any safety deposit boxes and lock boxes) with any financial institution (including but not limited to banks) or brokerage firm maintained in [its] name or held for its direct or indirect beneficial interest from October 1, 1988 to the present, including but not limited to, each account through which it directed securities or other financial transactions at any time since October 1, 1988, or in which proceeds from such transactions were held. (December 5, 1991, Order ¶ VI.)

3. The Court derives these facts from the SEC's application for an order of civil contempt. Respondents do not dispute the SEC's factual allegations, but they object to the characterization of their conduct as contemptuous.

4. Other attorneys from Chalk's firm apparently participated in the meeting.

5. Hammond and Chalk discussed other courses of action, but Hammond ultimately opted to pursue the liquidation plan. Hammond and his wife, as the Board of Directors and sole shareholders of Med–Fac, approved the liquidation plan on December 2.

6. Defendants note that, under Texas law, Med–Fac would have had the right to revoke the trust without an express provision to that effect.

7. Respondents note that the "creditors" listed in the MFI Trust Agreement are Med–Fac's "investors." They argue that the SEC's application for a civil contempt order is misleading because the use of the term "creditors" suggests that Med–Fac granted preferences to its trade creditors. The Court is satisfied that the SEC derived the term "creditors" from the Trust Agreement itself. The "creditors" in fact appear to be Med–Fac's "investors," but the choice of terms has little effect on the decision before the Court.

Hammond, Med–Fac, and Chalk did not disclose to the SEC the creation of the MFI Trust, the transfer of Med–Fac's assets prior to the TRO, or the disbursements from the Trust to Med–Fac's creditors. Hammond did not mention the trust in deposition testimony taken between the entry of the TRO and the preliminary injunction, although he responded to questions regarding several accounts receivable that Med–Fac transferred to the Trust.[8] Chalk, who accompanied Hammond at the deposition, also did not disclose the transfer of assets.

Hammond submitted an accounting on behalf of Med–Fac purportedly in compliance with the TRO. (Plaintiff's ex. D.) The accounting did not list among Med–Fac's assets the cash and receivables that it transferred to the MFI Trust.[9] (Id.) The SEC first learned of the MFI trust on June 27, 1992, when Hammond disclosed its existence in deposition testimony.[10] (Plaintiff's ex. E.)

*III. Civil Contempt*

■ The Court has both an inherent and a statutory power to enforce compliance with its orders. See *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); 18 U.S.C.A. § 401. The Court may exercise that authority through a civil contempt proceeding, which generally involves three stages.

Such proceedings involve (1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions; and (3) exaction of the threatened penalty if the purgation conditions are not fulfilled.

*NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173 (D.C.Cir.1981). This matter is in the second stage, and the SEC seeks an order finding the respondents in civil contempt and providing them an opportunity to purge the contempt.

■ To find the respondents in civil contempt, the Court must find by clear and convincing evidence that each respondent violated the December 5 and 18 Orders. *NOW v. Operation Rescue*, 747 F.Supp. 772, 774 (D.D.C.1990). The Court may consider only the respondents' actions after the entry of the TRO and its freeze order; conduct prior to the Court's Orders could not have violated them and therefore could not constitute contempt. *United States v. Landsberger*, 692 F.2d 501, 503 (8th Cir. 1982). The Court must conclude that respondents had notice of the terms of the Orders to reach a finding of contempt.[11] *Douglass v. First Nat'l Realty Corp.*, 543 F.2d 894, 897 (D.C.Cir.1976); *NOW*, 747 F.Supp. at 775. However, the Court need not find that the violations were willful or intentional. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *Blevins Popcorn*, 659 F.2d at 1183.

■ As a threshold matter, the respondents contend that the Court's TRO and its freeze order and the preliminary injunction did not reach the assets in the MFI Trust, therefore, the disbursements did not violate the Orders. The Orders expressly froze

---

**8.** Counsel for the SEC deposed Hammond on December 16. The parties suspended the deposition when they reached agreement regarding the terms of a preliminary injunction.

**9.** The accounting incorporated Med–Fac's November 1, 1991, submissions to the SEC which identified its bank accounts. In omitting the December 3 transfers, the accounting falsely suggested that no change had occurred since November 1. (Plaintiff's ex. D.)

**10.** Respondents emphasize that they did not attempt to hide the existence of the MFI Trust.

Hammond disclosed its existence in his deposition, and Chalk provided the SEC with the relevant documents creating the trust after the disclosure. It is not clear whether Hammond's failure to mention the trust in his earlier deposition was a mere error.

**11.** The Court may assume that respondents Hammond and Med–Fac, who are parties to this action, had notice of its Orders. See *NOW*, 747 F.Supp. at 775. With regard to Chalk and the MFI Trust, the Court must find actual notice, but formal service on the non-party respondents is not a requirement. *Id.*

any assets over which Med–Fac had "direct or indirect control" or in which Med–Fac held a "direct or indirect beneficial interest." At a minimum, Med–Fac retained indirect control over the assets in the MFI Trust by virtue of the right of revocation. In addition, Med–Fac retained an indirect beneficial interest in the assets because they were set aside to pay its creditors and, if any assets remained, its shareholders. Thus, the TRO and preliminary injunction imposed on the respondents an obligation to preserve the assets in the MFI Trust.

Respondents argue that the Court's Orders provided insufficient notice that they reached the assets within the Trust. Therefore, respondents contend, the disbursements from the Trust cannot provide a basis for a finding of contempt. Respondents may have believed that the assets in the Trust were beyond the scope of the asset freeze provisions. Nevertheless, the Court concludes that the language "direct or indirect beneficial interest" provided adequate notice that the Orders would cover assets held in trust to compensate Med–Fac's creditors and shareholders.

Finally, respondents argue that the disbursements benefited the very same "investors" for whom the SEC presumably sought to preserve funds. They maintain that the disbursements did not violate the Orders, or, in the alternative, that the Orders did not provide adequate notice that such disbursements would constitute violations. Respondents argue that, if the SEC or the Court intended for Med–Fac's assets to compensate parties other than Med–Fac's investors, then the freeze provisions should have reflected that purpose. Respondents' contentions are unpersuasive. The TRO and its freeze order plainly prohibited any transfer of Med–Fac's assets. The Order made no exceptions for transfers supposedly consistent with its purpose or with the purposes of the SEC in bring-

ing this lawsuit. Therefore, the Order provided clear notice that any transfer or dissipation of Med–Fac's assets would violate its terms.[12]

Respondents also argue that restoring the funds at this time would serve no purpose because they have benefited Med–Fac's investors. The Court acknowledges that Hammond did not transfer the assets for his personal benefit and that he sought to compensate Med–Fac's investors before himself. Ideally, the final relief in this action might include refunding all or a significant portion of the principal invested in Med–Fac to its investors. One purpose of the asset freeze was to maintain the status quo until this Court determines the appropriate relief and, if possible, frames an equitable distribution among the investors. Restoring the assets that have been depleted from the MFI Trust will serve that end.

Respondents suggest that the Court leave the funds in the hands of the investors unless it appears that they received more than their equitable shares.[13] In that event, they suggest, the Court may seek a refund of the payments after final judgment in this case. That suggestion provides no assurance that the funds will be available for the appropriate relief. Moreover, it leaves some of Med–Fac's investors without any compensation until the end of the case, while others have received payments that amount to preferences.[14] The funds those investors have received may be necessary for a fair distribution among all the investors. Therefore, the Court does not share respondents' view that a civil contempt order aimed at restoring the funds is a futile exercise.

## IV. Respondents Hammond, Med–Fac, and MFI

■ Having concluded that the TRO and its freeze order reached the assets in the

---

**12.** Contrary to respondents' apparent contention, a proviso permitting transfers consistent with the purpose of the freeze order would have rendered it less clear. The Order was unambiguous precisely because it prohibited all transfers.

**13.** The Court notes that the investors who received payments also were in violation of the

terms of the TRO and its freeze order. Thus, if the investors had notice of the asset freeze when they received payments, they too could be exposed to civil contempt proceedings.

**14.** Hammond stresses that he endeavored to repay those investors who are not members of his family before repaying his relatives.

MFI Trust, the Court finds that respondent Hammond violated the asset freeze provisions of the December 5 and 18 Orders. Hammond had both presumptive and actual notice of the provisions of both Orders. Despite such notice, he transferred funds from the MFI Trust to eight individuals between December 1991 and June 1992. Both Med–Fac and the MFI Trust also had notice of the Orders, Med–Fac as a party and the MFI Trust through Hammond as its trustee. Both respondents violated the asset freeze provisions. The MFI Trust, which did not respond to the Court's show cause Order, violated the Orders directly by disbursing the assets. Med–Fac violated the Orders by failing to prevent the transfer of the assets. Med–Fac could have prevented the disbursements by exercising its power of revocation under the Trust Agreement.

■ Respondent Hammond maintains that he is unable to restore the funds paid out of the MFI Trust from his personal finances.[15] To establish impossibility as a defense to a civil contempt order, a contemnor must demonstrate his inability to comply " 'categorically and in detail.' " *NLRB v. Trans–Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir.1973) (quoting *In re Byrd Coal Co.*, 83 F.2d 256 (2d Cir.1936)). Hammond has not substantiated his inability to repay the funds. Furthermore, Hammond will not have to restore the assets personally, if he can obtain refunds from the recipients. Hammond suggests that he has no practical means to obtain such refunds. Again, Hammond has not established impossibility in sufficient detail by outlining efforts to restore the funds. Therefore, Hammond, Med–Fac, and the MFI Trust are in contempt of the asset freeze provisions of the Court's December 5 and 18 Orders. By separate Order, the Court requires Hammond, Med–Fac, and the MFI Trust to use their best efforts to restore all the funds disbursed from the

MFI Trust within 30 days.[16] Failure to purge the contempt through such efforts may result in a civil monetary penalty up to $77,000 to be paid to Med–Fac subject to the existing assets freeze plus an additional penalty per day until the respondents comply with the Court's Order.

■ Respondents Hammond and Med–Fac are also in contempt of the accounting provision of the Court's Orders. The failure to include the December 2 and 3 transfers of assets from Med–Fac to the MFI Trust in Med–Fac's accounting violated the Orders. Therefore, the Court orders Hammond and Med–Fac to provide an accurate accounting that reflects the transfers to the MFI Trust and the disbursements to Med–Fac's creditors and that otherwise complies with the accounting provision of the Court's TRO and its freeze order. Respondents must provide the accounting within 30 days. Failure to comply within that time will result in a civil monetary penalty of $100 per day until Hammond and Med–Fac comply with the Orders.

## V. Respondent Chalk

■ Respondent Chalk maintains that he is not in contempt of the Court's Orders because his conduct in devising the liquidation plan preceded the TRO and its freeze order, and because he had no power to prevent the disbursements after the creation of the MFI Trust. The Court does not agree. Chalk had actual notice of the terms of the Court's Orders. Those terms expressly imposed a duty on Chalk as the attorney for Med–Fac to prevent the disposition, transfer, or dissipation of Med–Fac's assets. As set forth above, the assets transferred to the MFI Trust are within the terms of the asset freeze. Having established the MFI Trust, Chalk was aware that its primary purpose was to circumvent the asset freeze and to make payments to certain of Med–Fac's creditors. Under the terms of the Court's Orders, Chalk had an

15. Respondent Hammond represents that he has agreed to comply with the other terms offered by the SEC to resolve the contempt proceeding, but that he is unable to restore the funds.

16. As a practical matter, of course, respondent Hammond controls the actions of both Med–Fac and the MFI Trust. Therefore, his efforts to purge the contempt should be made on behalf of himself, Med–Fac, and the MFI Trust.

affirmative duty to prevent the anticipated disbursement of assets. As counsel for Hammond, Med–Fac, and the MFI Trust, Chalk could have advised the parties not to make payments to Med–Fac's creditors. Chalk also could have advised Med–Fac to revoke the Trust to preserve the transferred assets. Therefore, the Court finds that Chalk violated the December 5 and 18 Orders. The Court orders Chalk to assist respondents Hammond, Med–Fac, and the MFI Trust in employing best efforts to restore the assets disbursed from the MFI Trust within 30 days. Failure to comply will result in the same penalties facing Hammond, Med–Fac, and MFI. The Court defers ruling on the SEC's request for sanctions against Chalk in connection with his conduct prior to the entry of the TRO. If necessary, the Court will conduct a civil contempt hearing for violation of this Order. Any future penalty for such a violation may include an award of attorney's fees.

## VI. Conclusion

The Court finds that respondents Hammond, Med–Fac, the MFI Trust, and Chalk are in contempt of its December 5 and 18 Orders freezing the assets of Med–Fac and requiring the respondents to prevent any transfer of those assets. The Court also finds respondents Hammond and Med–Fac in contempt of the accounting requirement of the December 5 TRO and its freeze order. The Court sets forth the conditions for the respondents to purge the contempt in an accompanying Order.

## ORDER

Before the Court is the application of the Securities Exchange Commission (SEC) for an order of civil contempt and the responses of Keith Hammond, Med–Fac Investments, Inc. (Med–Fac), the MFI Liquidation Trust (MFI Trust), and John Allen Chalk to the Court's July 8 Order to show cause. For the reasons set forth in the accompanying Opinion, the Court makes the following findings by clear and convincing evidence:

1. Respondents Hammond, Med–Fac, the MFI Trust, and Chalk each have violated the asset freeze provisions of the temporary restraining order (TRO) entered on December 5, 1991, and the preliminary injunction entered on December 18, 1991.

2. Defendants Hammond and Med–Fac have violated the provisions of the December 5 TRO requiring Med–Fac to submit an accounting of all assets held in its name or for its direct or indirect beneficial interest.

Accordingly, it hereby is

ORDERED, that Hammond, Med–Fac, the MFI Trust, and Chalk are in civil contempt of this Court's Orders freezing Med–Fac's assets. It hereby further is

ORDERED, that Hammond, Med–Fac, the MFI Trust, and Chalk shall employ their best efforts to restore all funds removed or diverted from the MFI Trust or the MFI Trust account in violation of the Court's Orders within 30 days of the date of this Order. It hereby further is

ORDERED, that failure to purge the contempt as set forth above may result in a civil monetary penalty up to $77,000 to be paid to Med–Fac and subject to the existing asset freeze plus an additional penalty per day until the contemnors comply with the Court's Orders. It hereby further is

ORDERED, that Hammond and Med–Fac are in civil contempt of the Order of this Court regarding the submission of an accounting of Med–Fac's assets. It hereby further is

ORDERED, that, within 30 days of the date of this Order, defendants Hammond and Med–Fac shall file with the Court and serve upon the SEC an accounting in compliance with the December 5, 1991, TRO. It hereby further is

ORDERED, that Hammond shall use his best efforts to collect outstanding accounts receivable held by the MFI Trust and shall file with the Court and serve upon the SEC on a monthly basis a sworn accounting of all assets in, and disbursement from, the MFI Trust account. It hereby further is

ORDERED, that failure of Hammond and Med–Fac to purge the contempt with regard to the accounting provision as set forth above shall result in a civil monetary

penalty of $100 per day each until they comply with the Court's Orders.

SO ORDERED.