**Nikita PETTIES, et al., Plaintiffs,**

v.

**The DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 95–0148 (PLF).**

United States District Court, District of Columbia.

Sept. 11, 1995.

Beth Goodman, Tanya A. Harvey, Feldesman, Tucker, Leifer, Fidell & Bank, Washington, DC, for plaintiffs.

Karen Buck, Office of Corporation Counsel, Special Litigation Section, Washington, DC, for defendants.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This case came before the Court on September 8, 1995, for an emergency hearing to show cause why defendants the District of Columbia, Dr. Franklin L. Smith, the Superintendent of the District of Columbia Public Schools ("DCPS"), and Dr. B. Garnett Pinkney, Director of Special Education for DCPS, should not be held in contempt for failure to comply with this Court's Orders of March 17, June 29, July 21 and August 15, 1995.

## I. BACKGROUND

The plaintiffs in this case are minor students and their parents who represent a class certified by the Court on March 17, 1995, and defined as follows:

> all [District of Columbia Public Schools ("DCPS")] students currently placed in private special education schools or receiving special education and/or related services from a private third party provider, all [DCPS] students placed in public schools who currently are receiving related services from private providers, and all [DCPS] students who have been determined by an administrative decision or by agreement with the DCPS to be eligible to receive services from private providers (including private placements).

On March 17, 1995, the Court entered a Preliminary Injunction directing defendants to comply with their statutory obligations under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and its implementing regulations. *Petties v. District of Columbia,* C.A. No. 95–0148, Preliminary Injunction at 1–2, 1995 WL

153027 at *1 (D.D.C. Mar. 17, 1995). On July 21, 1995, the Court modified the Preliminary Injunction and class certification specifically to include all DCPS students with disabilities whose private special education placements and/or related services are funded by the District of Columbia Department of Human Services ("DHS"). *Petties v. District of Columbia*, 894 F.Supp. 465, 468 (D.D.C.1995).

As the Court noted in its Opinion of April 4, 1995, the purpose of the Individuals With Disabilities Education Act is to assure that children with disabilities have available to them a free and appropriate public education that addresses their unique needs. *Petties v. District of Columbia*, 881 F.Supp. 63, 65 (D.D.C.1995); *see* 20 U.S.C. §§ 1400 *et seq.* To assure that this goal is met, the IDEA directs the child's parents, teachers and other professionals to develop an Individualized Education Program ("IEP") for each special education student that sets forth the required instructions and services designed to meet the particular child's unique needs. 20 U.S.C. § 1401(a)(20). Once the IEP is developed, the school system must provide an appropriate placement that meets those needs and, if an appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available educational-related services provided by private organizations to supplement a public placement. 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340–300.350, 300.400–300.403.

The statute further provides that once a placement has been made, agreed to or determined to be appropriate after an administrative hearing, a school system proposing to change the placement must provide written notice to the student's parents and an explanation of why the school system proposes to take the action. It may not change a student's placement without the parents' agreement or a determination in an administrative due process hearing that the change in placement is appropriate and permissible under the IDEA. 20 U.S.C. § 1415; 34 C.F.R. §§ 300.504, 300.505, 104.36. As the Court previously held, maintenance of the placement includes full payment for the program in which the student is placed. *Petties v.*

*District of Columbia*, 881 F.Supp. 63, 65 (D.D.C.1995).

On May 12, 1995, the Court held defendants in contempt of this Court's Order of March 17, 1995, for their unilateral announcement to private providers that they would not pay tuition or provide related services for DCPS students after June 9, 1995. As the Court explained in its opinion:

Defendants' unilateral decision to cut off funding ... is the same type of unilateral policy decision that undermines the individualized educational decision inherent in the IEP, and it violates the IDEA.... [By unilaterally shortening the school year for these children] the very harms that were of concern to the Court in deciding to grant the Preliminary Injunction will be exacerbated for these students, children of tender ages who are already physically or emotionally disabled and are less able than most to cope with physical or emotional stress.

*Petties v. District of Columbia*, 888 F.Supp. 165, 170–71 (D.D.C.1995).

On June 29, 1995, the Court entered an additional Order requiring defendants (1) to provide assurances to all private special education providers that payment would be made in full, (2) to pay all invoices in full within 30 *calendar* days of receipt, or if disputed, to notify providers of the dispute within 15 calendar days, and (3) to provide the Court and plaintiffs' counsel with a monthly compliance report. The Order also instructed plaintiffs' counsel to monitor defendants' progress and report to the Court, the fees and costs of which are to be paid by defendants. While many providers at that time requested earlier payment or payment in advance of services being rendered, the Court noted its view that "in reliance on the Court's Orders, private special education schools and service providers should be content to submit invoices after services have been rendered, in accordance with the DCPS cost reimbursement policy." *Petties v. District of Columbia*, C.A. No. 95–0148, Order at 2 (D.D.C. June 29, 1995).

The parties came before this Court for a status conference on August 10, 1995, in part

to anticipate any difficulties that might arise before the new school year commenced on September 5, 1995. At that time, defendants' counsel represented that the District of Columbia required more time to collect the data needed to comply with the Court's June 29 and July 21 Orders and that, given such an enlargement of time, payment to the special education providers would proceed as promised. In an order dated August 15, 1995, the Court granted defendants an enlargement of time until August 18, 1995, to pay all outstanding balances, with the understanding that no further extension would be granted, and an enlargement of time to September 1, 1995, to provide the required written assurances to private providers.

These Orders were designed to ensure that students with mental, physical and emotional disabilities in the District of Columbia receive the special educational services to which they are statutorily entitled under federal law and to assure private providers of these services that they will be paid in a reliable and timely fashion as required by statute. They were further intended to halt defendants' *ad hoc* and unilateral decision-making regarding student placement in violation of these students' rights under the IDEA.

Defendants came before the Court on September 8, 1995, four days into the new school year, in acknowledged non-compliance with this Court's orders. The Court's Order of August 15, 1995 requires defendants to pay all outstanding bills to private providers by August 18, 1995, and to provide written assurances to all private providers that future payments will be made in compliance with this Court's orders. In many cases defendants have not done so, once again, without notice to plaintiffs or leave of the Court, ignoring their obligations under statute and Court order. Moreover, plaintiffs have identified several emergency situations in which providers are now unable or unwilling to provide services for disabled students as a result of the District's non-payment. Plaintiffs have also represented to the Court that defendants have not complied with their court-ordered reporting obligations imposed by the June 29 Order.

## II. CIVIL CONTEMPT

The Court has both an inherent and a statutory power to enforce compliance with its orders and may exercise that authority through civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *United States v. United Mine Workers of America,* 330 U.S. 258, 330–32, 67 S.Ct. 677, 713–15, 91 L.Ed. 884 (1947); *SEC v. Parkersburg Wireless Ltd. Liab. Co.,* 156 F.R.D. 529, 534 (D.D.C.1994); *SEC v. Current Financial Services, Inc.,* 798 F.Supp. 802, 806 (D.D.C. 1992); *see* 18 U.S.C. § 401. A party is in contempt of court when it "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir.1987).

In a civil contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5th Cir.1987); *see NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1183–85 (D.C.Cir.1981); *SEC v. Current Financial Services, Inc.,* 798 F.Supp. at 806. The court need not find that the violations were willful or intentional. *SEC v. Current Financial Services, Inc.,* 798 F.Supp. at 806; *NOW v. Operation Rescue,* 747 F.Supp. 772, 774–75 (D.D.C.1990).

Civil contempt is a remedial device intended to achieve full compliance with a court's order. *Hicks v. Feiock,* 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429–1430, 99 L.Ed.2d 721 (1988); *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d at 399–400. Its goal is not to punish but to exert only so much authority of the court as is required to assure compliance. *See Mercer v. Mitchell,* 908 F.2d 763, 768 n. 9 (11th Cir.1990); *Matter of Trinity Industries, Inc.,* 876 F.2d 1485, 1494 (11th Cir.1989); *NOW v. Operation Rescue,* 747 F.Supp. at 774. The sanctions imposed in civil contempt proceed-

ings therefore ordinarily are conditional, and a person or entity held in civil contempt may avoid the sanctions by promptly complying with the court's order. *Hicks v. Feiock*, 485 U.S. at 632–35, 108 S.Ct. at 1430–1431; *Penfield Co. v. SEC*, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947).

The Court finds that when defendants failed to pay all outstanding balances to private providers on August 18, 1995, they were in contempt of this Court's August 15, 1995, Order.

### III. DISCUSSION

■ This Court has endeavored to create a climate in which students, parents and private special education providers can have confidence that the District of Columbia will fulfill its obligations under the IDEA. It is particularly important that private providers be able to rely on regular and timely payments for their services so that they may continue to serve students without interrupting the students' educational programs or jeopardizing the providers' businesses. Many of these providers are small operations that are dependant on timely payments in order to survive. By failing to comply with this Court's orders, the District of Columbia has undermined the climate of reliability and imposed an unacceptable burden on disabled students, their families and private providers.

In violating this Court's orders, defendants have also breached their duties under the federal statutory and regulatory scheme created by the IDEA. The Court recognizes that the District of Columbia is in severe financial difficulties and that all the citizens of the District, including the students and parents in this case, have a deep interest in the appropriate allocation of the District's limited financial resources. The District has many other critical fiscal obligations which it must meet and the Court is sensitive to those constraints. Nevertheless, those obligations do not permit the District to ignore this Court's orders and the Congressional mandates embodied in the IDEA. Congress has decreed, and this Court has found, that students with disabilities are entitled to a free appropriate special education and that the school system cannot unilaterally change a student's placement without a due process administrative hearing under the IDEA and its regulations. By failing to pay its private providers in a timely fashion, the District of Columbia has unilaterally changed the placements of these students. *See Petties v. District of Columbia*, 881 F.Supp. 63, 69, (D.D.C. 1995). Defendants have also precipitated the imminent displacement of some students and jeopardized the financial viability of many of the providers. This Court is thus obligated once again to find defendants in violation of the IDEA and its regulations and in contempt of this Court's orders.

Plaintiffs have submitted a description of the extent of defendants' lack of compliance. In their papers and in open court, plaintiffs have stated that defendants have failed to make full payment of outstanding balances to private providers, have failed to provide assurances to private providers that payment will be made in a timely fashion and on a continuing basis, and have failed to submit accurate status reports. In addition, plaintiffs identify four emergency situations in which students are threatened with imminent displacement as a result of the District's nonpayment. Those four providers requiring immediate attention are: the Metropolitan Speech Pathology Group which serves one student; the Maryland School for the Blind which serves four DCPS students; the Washington Developmental Center which services a number of DCPS students and is being threatened with eviction for its inability to pay rent; and the Kennedy–Krieger Institute which has demanded prepayment for one student. The requirements set forth in the Order accompanying this Memorandum Opinion address the emergency situations faced by these providers and students with the exception of the Kennedy–Krieger Institute which will be dealt with separately.

In addition to urging the immediate payment of these providers, plaintiffs recommend that this Court impose more stringent reporting requirements, a prepayment system requiring the District of Columbia to pre-pay private providers at the beginning of each fiscal quarter, a modified schedule of payment deadlines for outstanding balances, and daily fines to be imposed for violations of

those deadlines. Plaintiffs shall submit proposals for such modifications by September 26, 1995. The Court has provided for a schedule of daily fines for future noncompliance in the accompanying Order.

Defendants acknowledge that they have failed to pay all outstanding balances to private providers as ordered. Counsel represented in court, however, that all DCPS payments will be made in full by September 15, 1995, and that all DHS payments will be made in full by September 22, 1995. Counsel also represented that checks for several providers identified by plaintiffs will be available for pick up on September 11, 1995. The Court has taken account of these representations in crafting the schedule contained in the accompanying Order.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, the Court finds defendants in contempt of the Court's Order of August 15, 1995, with respect to the payment of outstanding balances to private providers. Amended deadlines for payment, the immediate production of specific checks for providers in emergency situations, and provisions for future sanctions are contained in the accompanying Order.

SO ORDERED.

## ORDER

On September 8, 1995, this Court held a hearing in the above-captioned matter requiring defendants to show cause why they should not be held in contempt of the Court's Orders of March 17, June 29, July 21 and August 15, 1995. The Court, having considered Plaintiffs' Third Status Report, plaintiffs' supplement thereto, and the September 1, 1995 Submission of defendants, and having heard oral argument on the matters raised therein, and for the reasons stated in the accompanying Memorandum Opinion issued this day, hereby finds defendants in contempt of the Court's Order of August 15,

1995. Accordingly, it is hereby ORDERED that

1. Defendants shall make checks in the following amounts available for pick up by the following providers no later that September 12, 1995, at 2:00 p.m.:

$13,370 payable to the Washington Developmental Center

$560 and $1,635.50 payable to the Metropolitan Speech Pathology Group

2. Defendants shall pay or cause to be paid no later than September 15, 1995, at 2:00 p.m. all outstanding invoices to DCPS for private special education placements and/or related services rendered through July 31, 1995.

3. Defendants shall pay or cause to be paid no later than September 22, 1995, at 2:00 p.m. all outstanding invoices to DHS for private special education placements and/or related services rendered through July 31, 1995.

4. Payments for special education placements and related services rendered during August 1995 and thereafter shall be paid in strict accordance with this Court's Orders of June 29, 1995, and July 21, 1995, that is within 30 *calendar* days of the date of receipt of the invoice, as well as with any future Orders that may be issued by the Court in this matter.

5. The payments specified in paragraphs 2, 3, and 4 above shall be available for pick up no later than the specified dates for any providers for whom payments are, by prior arrangement, to be held by defendants for pick up.[1] All such checks not held for pick up shall be mailed by first class mail, postage pre-paid, and postmarked by the United States Postal Service on or before the specified dates.

6. A fine in the amount of $25,000 per day shall be assessed against defendants for each *calendar* day that defendants are not in full compliance with paragraphs 2 and 3 above.

---

1. Any providers who wish to have their payments held for pick up, and have not made arrangements to date, may so notify plaintiffs' counsel herein no later than the close of business on September 12, 1995. Plaintiffs' counsel shall provide a list of any such providers to defendants' counsel no later than noon on September 14, 1995.

7. A fine in the amount of $5,000 per day shall be assessed against defendants for each *calendar* day that defendants are not in full compliance with paragraph 4 above for the first five *calendar* days of noncompliance; thereafter a fine in the amount of $10,000 per day shall be assessed against defendants for each of the next five *calendar* days that defendants remain in noncompliance with paragraph 4 above; thereafter a fine in the amount of $15,000 per day shall be assessed against defendants for each of the next five *calendar* days that defendants remain in noncompliance with paragraph 4 above.

8. For the purposes of paragraphs 6 and 7 above, the term "full compliance" shall mean the same compliance as required by the June 29 Order, including the provisions for resolving genuine disputes.

9. Nothing in this Order shall be construed to authorize the delay or reduction or withholding of any payment.

10. After consultation with defendants, plaintiffs shall submit by September 26, 1995, their proposal regarding modification of the Court's prior Orders as they pertain to, *inter alia,* the payment schedule with which defendants must comply and the reporting requirements that apply to defendants.

SO ORDERED.