Nikita PETTIES, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. No. 95–0148 (PLF).

United States District Court,
District of Columbia.

July 21, 1995.

Beth Goodman, Tanya A. Harvey, Feldesman, Tucker, Leifer, Fidell & Bank, Washington, DC, for plaintiffs.

Karen Buck, Office of Corporation Counsel, Special Litigation Section, Washington, DC, for defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on plaintiffs' motion to modify class certification and preliminary injunction. The Court concludes that plaintiffs' motion should be granted.

## I. BACKGROUND

On March 17, 1995, the Court certified a class defined as follows:

all [District of Columbia Public Schools ("DCPS")] students currently placed in private special education schools or receiving special education and/or related services from a private third party provider, all [DCPS] students placed in public schools who currently are receiving related services from private providers, and all [DCPS] students who have been determined by an administrative decision or by agreement with the DCPS to be eligible to receive services from private providers (including private placements).

On the same date the Court entered a Preliminary Injunction directing the defendants to comply with their statutory obligations under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and its implementing regulations. *Petties v. District of Columbia*, C.A. No. 95–0148, Preliminary Injunction at 1–2, 1995 WL 153027 (D.D.C. Mar. 17, 1995). The Court

ordered the defendants to pay within 14 days all costs outstanding as of the date of the Court's Order, including costs of tuition for all private special education placements of DCPS students and costs of all special education related services that private providers render to DCPS students pursuant to contracts or other agreements with the DCPS. The Court also required the DCPS to give assurances, subject to the Court's approval, to all providers of private special education services to DCPS students that payments would be made in full and in a timely manner.

On May 12, 1995, the Court denied plaintiffs' motion to hold defendants in contempt for their failure to pay in a timely fashion the private school placements or related services of those DCPS students who are to be funded by the Department of Human Services ("DHS"). The Court concluded that it never intended by its March 17 Order to cover DHS-funded students or that such students were included in plaintiffs' certified class. The Court stated that

> there was insufficient evidence before the Court on which it could have reached the DHS issue when it issued its Preliminary Injunction. For example, counsel for the District of Columbia represented that many of the students funded by DHS have been placed not as the result of an administrative hearing under the IDEA, but rather by judges of the Superior Court of the District of Columbia in the context of neglect, child abuse or delinquency cases. Other students have been referred to DHS by the DCPS because the DCPS has concluded that such students may require residential placements. Counsel for plaintiffs acknowledged that these references may occur either before or after an administrative determination has been made under the procedures set forth in the IDEA and that there may or may not be an IEP in place for these students.

> The Court's Opinion and Order were premised on the fact that all students in the class covered by the Preliminary Injunction were students who had been placed or entitled to be placed under the IDEA after an administrative decision. The injunction did not cover DHS-funded

students, and defendants therefore are not in contempt of the Court's Order.

*Petties v. District of Columbia,* 888 F.Supp. 165, 172 (D.D.C.1995).

The Court stated that the plaintiffs could file a motion to amend their complaint or modify the injunction to include DHS-funded students and that such a motion must be supported by evidence that the IDEA applies to the DHS-funded students and that the defendants are violating the statute with respect to these students. The plaintiffs have now filed a motion to expand the class and the preliminary injunction, supported by legal argument and numerous additional affidavits.

## II. DISCUSSION

### A. *The IDEA's Applicability To District of Columbia Agencies*

The DCPS, the District of Columbia's State Educational Agency as defined in the IDEA, is ultimately responsible for ensuring that all children with disabilities in the District of Columbia receive a free, appropriate education in accordance with the IDEA. 20 U.S.C. § 1412(6); 34 C.F.R. § 300.600. The IDEA expressly applies "to all subdivisions of the State that are involved in the education of children with disabilities [including] [o]ther State agencies ... (such as Department of Mental Health and Welfare ...)...." 34 C.F.R. § 300.2; *see also* 20 U.S.C. §§ 1412(1)(6), 1413(a). The regulations implementing the IDEA require the DCPS to ensure that an Individual Education Program ("IEP") is developed and implemented for each child placed in or referred to a private school or facility by *any* public agency, such as the DHS; they also require it to monitor the provision of special education and related services to all such children. 34 C.F.R. §§ 300.341, 300.401, 300.402. The regulations also require the DCPS to develop and implement interagency agreements with other state and local agencies that provide or pay for services required by the IDEA for children with disabilities. 34 C.F.R. § 300.152.

In summary, the IDEA and its implementing regulations clearly mandate that the requirements of the statute—including that children with disabilities receive a free, appropriate education, that IEPs are developed to ensure that appropriate special education is provided to each child and that procedural protections are afforded the students—apply to District of Columbia agencies such as the DHS.

The District of Columbia has long recognized its obligations under the IDEA, and consequently has issued Mayor's Order 94–82 and the implementing Administrative Issuance. Plaintiffs' Exhibit A. Mayor's Order 94–82 requires District of Columbia agencies, including the DHS, to follow the dictates of the IDEA. It provides, for example, that the DHS shall assist the DCPS to identify all children with disabilities who are residents of the District of Columbia or are wards of the DHS; to provide and implement an IEP for each student "in accordance with the provisions of IDEA"; and to "comply with the provisions of IDEA regarding due process and procedural safeguards." Mayor's Order 94–82 at 1865. In addition, Mayor's Order 94–82 states that the DCPS is "to exert general supervision over all special education and related services to children with disabilities, and to monitor such agencies' compliance with this Order, the implementing Administrative Issuance, [and] the requirements of IDEA...." Mayor's Order 94–82 at 1866–87.[1]

### B. DHS–Funded Students With Disabilities

■ There are at least three categories of students for whom DHS, rather than DCPS, pays for special education placements: (1) those who the DCPS concludes require full-time residential placements; (2) those who already have been placed in a private special education school funded by the DCPS and

who enter the DHS system as the result of abuse, neglect or delinquency proceedings; and (3) those who are placed by judges of the Superior Court of the District of Columbia or by the DHS on its own initiative in the context of abuse, neglect or delinquency proceedings. The Court concludes that the IDEA applies to all of these students.

The DHS pays for the private special education placements of students who the DCPS has determined should be referred to the Residential Placement Unit ("RPU") of the DHS for residential placement. *See* Declaration of Antonia T. Brathwaite–Fisher ("Fisher Decl.") at ¶¶ 6, 8; Supplemental Declaration of Donna Wulkan ("Wulkan Supp.Decl.") at ¶ 6. The RPU operates in part pursuant to the Memorandum Agreement Regarding Residential Placement ("Memorandum"), issued on July 3, 1980, and pursuant to Procedures and Guidelines Regarding the Referral, Placement and Monitoring of Handicapped Children and Youth in Residential Treatment Facilities ("Procedures and Guidelines"), issued on January 28, 1986. Plaintiffs' Exhibits D and E. The Memorandum and the Procedures and Guidelines expressly provide that referrals to and placements by the RPU must occur in accordance with the IDEA. Article III of the Memorandum states that "[t]he District of Columbia will provide residential placements pursuant to [the IDEA], 20 U.S.C. § 1401, *et seq.* Such placement shall be made only to provide special education for such period that said instruction is required. The components of this instruction must be identified in the [IEP]." Memorandum at 3. The Procedures and Guidelines set out the criteria for residential placement: "All children and youth referred for residential placement ... must be assessed for special education services according to [the IDEA]." Procedures and Guidelines at 1. On this basis, the Court concludes that the IDEA clearly applies to

---

1. In practice, the DCPS exerts IDEA authority over DHS-funded students. It has required at least one school to replace the IEP form it used for DHS-placed students with the DCPS standard form, and has required this school to provide the DCPS with attendance information for DHS-funded students at the school. Schultz Supp. Decl. at ¶ 8. Furthermore, the DCPS has regularly reviewed the status of DHS-funded students as part of its monitoring responsibilities under the IDEA. Korz Supp.Decl. at ¶ 4; Schultz Supp.Decl. at ¶ 7. Similarly, private special education schools have sent information pertaining to DHS-funded students, including students' IEPs, to the DCPS as part of the schools' reporting responsibilities. Korz Supp.Decl. at ¶ 4; McConnell Decl. at ¶ 5.

students referred to the RPU for residential placement.

Other students enter the DHS system as the subjects of abuse, neglect or delinquency proceedings in the District of Columbia Superior Court. Such children may have already been placed and funded under the IDEA by the DCPS prior to their changed status or they may have gone through the IDEA administrative process with the DCPS but are subsequently placed and/or funded by the DHS. In these circumstances, the DHS assumes funding responsibility for the students' private special education school placements or related services. The IDEA protections continue to apply to such students. The mere fortuity that the DHS assumes responsibility for funding the education of these students from the DCPS does not change the applicability of the IDEA.

In other, albeit similar instances, students who find themselves in Superior Court in connection with abuse, neglect or delinquency proceedings are not placed in private special education programs until after they become wards of the DHS. In these circumstances, the DHS may on its own initiative place such students in its care and custody in private special education programs or the Superior Court may include in its disposition of a neglect, abuse or delinquency case an order for special education evaluation. *See* Declaration of Carla Rappaport ("Rappaport Decl.") at ¶ 3; Wulkan Supp.Decl. at ¶ 6 and Attachment 2. In either case, it is apparent that the IDEA applies to these children as well.

Normally, when the Superior Court orders a special education evaluation as part of its disposition of an abuse, neglect or delinquency case, it requires the development of an IEP and may order the participation of the DCPS in the process. Wulkan Supp.Decl. at ¶¶ 6–7. Only in a rare emergency, when it is

clear that a child will not otherwise be timely or appropriately placed, will the Superior Court place a child at a private special education school without the initiation of any administrative procedures. *See* Declaration of Diane Weinroth ("Weinroth Decl.") at ¶¶ 4, 5; Wulkan Supp.Decl. at ¶ 6. Ordinarily the Superior Court will decline to order a placement if there is a dispute over the child's need for special education services, the failure of the public school system to provide an appropriate public education or the appropriateness of the private facility in which placement is sought. Rappaport Decl. at ¶ 5. When the Superior Court does order a placement, the schools generally will develop IEPs for the student under the IDEA and will invite the DHS and DCPS to participate. Wulkan Supp.Decl. at ¶ 8. The defendants have offered no reason, and the Court finds none, why the IDEA does not apply to these students as well.[2]

In short, the students who are placed and funded by the DHS are treated no differently vis-a-vis the IDEA from students who are placed by the DCPS and funded by either the DCPS or the DHS. They are placed and receive services according to their IEPs. *See* Declaration of Richard C. Birkel ("Birkel Decl.") at ¶ 6; Supplemental Declaration of Philippe J. Dupont ("Dupont Supp.Decl.") at ¶¶ 4, 5; Supplemental Declaration of Alan C. Korz ("Korz Supp.Decl.") at ¶ 3; Declaration of Mark McConnell ("McConnell Decl.") at ¶ 5; Supplemental Declaration of Sharon Raimo ("Raimo Supp.Decl.") at ¶ 4; Supplemental Declaration of Edward Schultz ("Schultz Supp.Decl.") at ¶ 6. In addition, there is no difference with respect to the provision of educational and related services, monitoring by the DCPS, or procedural rights available to the students and their families or legal guardians. *See* Rappaport Decl. at ¶ 6.

---

**2.** The defendants have presented no evidence contradicting the Court's understanding that when the Superior Court orders a special education evaluation as part of its disposition of an abuse, neglect or delinquency case, an IEP is developed and the Superior Court encourages or requires the participation of the DHS and the DCPS. As noted, the Superior Court does not itself order a particular placement except in rare

circumstances. Thus, this Court's involvement will not affect any proceedings in the Superior Court. By contrast, this Court is addressing the broad issue of whether the District of Columbia's general failure to pay timely or fully is harming the ability of all District of Columbia children with disabilities to obtain a free appropriate education pursuant to the IDEA.

The DCPS is responsible for ensuring that all District of Columbia students entitled to special education and related services pursuant to the IDEA receive those services according to the requirements of the IDEA. The DCPS has recognized this responsibility and the defendants do not dispute it. The Court concludes that such responsibility includes ensuring that the providers of services to DHS-funded students receive timely and complete payments.

### C. Defendants Have Violated the IDEA and Such Violations Cause DHS–Funded Students Irreparable Harm

■ The declarations provided by plaintiffs, which the defendants have not challenged with opposing declarations or affidavits or even in argument in their memorandum in opposition to plaintiffs' motion, show that the DHS has failed to pay on a timely basis for private special education placements. See Birkel Decl. at ¶ 7; Dupont Supp.Decl. at ¶¶ 7–9; Fisher Decl. at ¶ 8; Declaration of Karen Howze ("Howze Decl.") at ¶ 3; Korz Supp.Decl. at ¶ 6; McConnell Decl. at ¶¶ 7–8; Second Supplemental Declaration of William F. Patterson ("Patterson Sec.Supp.Decl.") at ¶ 5; Raimo Supp.Decl. at ¶ 5; Rappaport Decl. at ¶ 7; Schultz Supp. Decl. at ¶ 10; Wulkan Supp.Decl. at ¶ 3. Nonpayment for services to students who receive their education or related services pursuant to the IDEA violates the IDEA. Petties v. District of Columbia, 881 F.Supp. 63, 66–67 (D.D.C.1995). The nonpayment of funds by the DHS violates the IDEA because it threatens a change to the placement of a student without providing the student with the procedural protections guaranteed by the IDEA and made applicable to all the District of Columbia agencies by the Mayor's Order 94–82. In addition, the DHS' failure to make timely payments violates DCPS' obligations pursuant to the IDEA because the DCPS bears the responsibility for ensuring that all District of Columbia children with disabilities receive free and appropriate education in accordance with the IDEA. See North v. District of Columbia Board of Education, 471 F.Supp. 136, 139–40 (D.D.C.1979).

■ The plaintiffs' declarations also show that plaintiffs will suffer irreparable harm absent the requested relief. Because of defendants' failure to pay for placements and services on a timely basis, many of the schools currently serving DHS-funded students have stopped accepting such students and are indicating that they will not continue to serve DHS-funded students after the 1994–95 school year. See Birkel Decl. at ¶ 8; Dupont Supp.Decl. at ¶ 10; Fisher Decl. at ¶¶ 8, 10; Korz Supp.Decl. at ¶ 8; McConnell Decl. at ¶ 9; Patterson Sec.Supp.Decl. at ¶¶ 6, 7; Raimo Supp.Decl. at ¶ 7; Rappaport Decl. at ¶ 7; Schultz Supp.Decl. at ¶¶ 8, 11; Wulkan Supp.Decl. at ¶ 3. In some cases, services to DHS-funded students have been interrupted or terminated, and in other cases students have been prevented from obtaining appropriate placements as a result of defendants' payment practices. See Fisher Decl. at ¶ 8; Howze Decl. at ¶ 4; Declaration of Ronald L. Pettiway ("Pettiway Decl.") at ¶¶ 5, 8; Declaration of Claudette Tyler ("Tyler Decl.") at ¶¶ 7, 8. At a minimum, therefore, the DHS-funded students suffer the same harm as the Court identified with respect to the DCPS-funded students. See Petties v. District of Columbia, 881 F.Supp. 63, 67–70 (D.D.C. April 4, 1995); Birkel Decl. at ¶ 12; Dupont Supp.Decl. at ¶ 9; Fisher Decl. at ¶ 12; Howze Decl. at ¶ 5; Korz Supp.Decl. at ¶ 9; McConnell Decl. at ¶ 9; Patterson Sec.Supp.Decl. at ¶ 8; Raimo Supp.Decl. at ¶ 6; Tyler Decl. at ¶¶ 9, 10; Wulkan Supp.Decl. at ¶ 9.

Moreover, DHS-funded students may suffer even greater harm from the potential interruption or termination of their placement or services and the attending uncertainty regarding their status than DCPS-funded students do. They face not only the difficulties caused by their learning or emotional disabilities, but also, in many cases, the adversities that confront a child who is in the DHS system because of abuse, neglect or delinquency proceedings. See Birkel Decl. at ¶ 9; Howze Decl. at ¶ 5; Pettiway Decl. at ¶ 10; Raimo Supp.Decl. at ¶¶ 6, 7; Weinroth Decl. at ¶ 8; Wulkan Supp.Decl. at ¶ 4.[3]

---

3. The defendants argue that the class representatives are not typical of DHS-funded students.

Plaintiffs argue, and the Court thinks correctly, that the named representatives are typical. Nev-

### III. CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion to modify the class certification and preliminary injunction and orders the defendants to make timely payments for private placements and related services, to pay in full, and to assure that students funded by the DHS will have their placements or services fully paid on time.[4] The Court modifies the current class definition to specifically include not only DCPS-funded students but also those students funded by the DHS. An Order consistent with this Opinion is issued this same day.

SO ORDERED.

### ORDER MODIFYING CLASS CERTIFICATION AND PRELIMINARY INJUNCTION

This matter having come before the Court on Plaintiffs' Motion to Modify Preliminary Injunction and Class Certification Order, and upon consideration of said motion, the supporting and opposing papers filed by the parties, including plaintiffs' declarations and exhibits, the arguments presented in open court and the entire record in this matter, and consistent with the Court's Opinion issued this same day, the Court finds as follows:

1. Pursuant to the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., and its implementing regulations, the Rules of the Board of Education of the District of Columbia, and the Administrative Issuance System of the District of Columbia, the District of Columbia Department of Human Services ("DHS"), an executive agency of the defendant District of Columbia, has assumed funding responsibility for the private special education placements and/or related services of certain District of Columbia Public Schools ("DCPS") students with disabilities.

2. DCPS students with disabilities whose private special education placements and/or related services are funded by DHS are entitled to, and receive, those placements and/or services pursuant to the IDEA, and are entitled to all of the substantive and procedural rights and safeguards of the IDEA.

3. DCPS, as the designated State Educational Agency ("SEA"), is responsible for ensuring that all District of Columbia students entitled to special education and related services pursuant to the IDEA receive those services in accordance with the requirements of the IDEA.

4. DHS has not paid the costs of private special education placements or related services for which it has been billed either fully or on a current or timely basis for at least the 1994–95 school year. DCPS has not taken steps to ensure the full and timely payment of these costs in the absence of payment by DHS. Consequently, defendants have violated the IDEA and other laws and regulations intended to ensure that District of Columbia students with special education needs receive a free, appropriate education.

5. Unless defendants fully and immediately pay for the private special education placements and/or related services of the DHS-funded students and give satisfactory written assurances that such payments will be made on a current basis in the future, many, if not most, of these students will have their placements and/or services terminated, and there is no indication that appropriate alternative placements are available to meet the students' individual needs.

6. Plaintiffs have demonstrated that the DHS-funded students with disabilities are suffering and will continue to suffer irreparable harm as a result of defendants' ongoing failure to meet their financial obligations, which has placed the DHS-funded students' education in constant jeopardy, already has caused some DHS-funded students to be deprived of their placements and prevented

---

ertheless, the plaintiffs have requested that they be allowed to add a named plaintiff who is funded by the DHS to the complaint. The Court shall allow plaintiffs to make such an amendment.

4. The DHS is not a defendant in this action, but this does not affect the conclusions set forth in this Opinion. That the District of Columbia is named as a defendant is sufficient to ensure that the Preliminary Injunction applies to the DHS, an executive agency of the District of Columbia. In addition, as explained in this Opinion, the DCPS is ultimately responsible for ensuring payment for the placements of or services to the class members.

others from attaining appropriate placements.

Plaintiffs' Motion to Modify Class Certification and Preliminary Injunction is, therefore, GRANTED, and it is hereby

ORDERED that the plaintiff class in this action shall be modified to specifically include all DCPS students with disabilities whose private special education placements and/or related services are funded by the District of Columbia Department of Human Services ("DHS"), and

IT IS FURTHER ORDERED that

(1) Defendants shall, within fourteen (14) calendar days of the date of this Order, fully pay all costs outstanding as of the date of this Order, including the costs of tuition and related services, of all private special education placements and/or related services of DCPS students for which the District of Columbia Department of Human Services ("DHS") has been billed; and

(2) Defendants shall give written assurances, in a form satisfactory to the Court, that future payments for the costs of any and all private special education placements and/or related services for DCPS students for which DHS has been billed, will be made on a current basis (in accordance with the billing procedures and requirements of each private provider); [1] and

(3) Defendants shall report to this Court, or its designee, on a regular basis, to be determined by the Court, regarding defendants' compliance with this Order, until such time as this Court determines that the rights of the plaintiff class, or of any members thereof, are no longer being violated or in immediate jeopardy of violation, thereby making continued monitoring by the Court unnecessary.[2]

SO ORDERED.

---

1. The written assurances for DHS-funded students shall take the same form and have the same content as those issued with respect to the DCPS-funded students pursuant to this Court's separate Order regarding the same, dated June 29, 1995.

2. The same reporting requirements shall apply with respect to DHS-funded students as for the DCPS-funded students, as set forth in this Court's separate Order regarding the same, dated June 29, 1995.