**Mikeisha BLACKMAN,
et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA,
et al., Defendants.**

**James JONES, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA,
et al., Defendants.**

**Nos. CIV.A.97–1629 (PLF),
CIV.A.97–2402 (PLF).**

United States District Court,
District of Columbia.

June 9, 2004.

See, also, 294 F.Supp.2d 15.

---

Andrew L. Lipps, Ky Elaine Kirby, Swidler, Berlin, Shereff & Friedman, L.L.P., Carolyn W. Houck, Chevy Chase, MD, Charles A. Moran, Myrna L. Fawcett, Bonita Alexis Jones–Moon, Fawcett & Fawcett, Paul Leonaed Chassy, Chassy & Chassy, Kensington, MD, Ronald Lee Drake, Tamara Lynn Seltzer, Bazelon Center for Mental Health Law, Alisa H. Reff, Drinker, Biddle & Reath, Margaret A. Kohn, Donna Lee Wulkan, Washington, DC, for Mikeisha Blackman, et al., Plaintiffs.

Cary D. Pollak, Daniel Albert Rezneck, Office of Corporation Counsel, District of Columbia, Daniel Herbert Margolis, Patton Boggs, LLP, Jeffrey Thomas Infelise, Office of Corporation Counsel, D.C., Laurie Pouzzner McManus, Arlinfton, VA, Lisa Annette Bell, Office of the General Counsel, DC, Dept. of Consumer & Regulatory Affair, Robert C. Utiger, Office of the Corporation Counsel, Urenthea McQuinn, Office of Corporation Counsel, D.C., Robert Ray Rigsby, Office of Corporation Counsel, D.C., Veleter Mazych, DCPS General Counsel, Veronica A. Porter, Office of Corporation Counsel for the District of Columbia, Washington, DC, for District of Columbia, et al., Defendants.

Paul Leonard Chassy, Chassy & Chassy, Kensington, MD, for James Jones, et al., Plaintiffs.

Urenthea McQuinn, William Randolph Morel, Office of Corporation Counsel, D.C., Melvin W. Bolden, Jr., Office of the Corporation Counsel for DC, Equity Division, Cary K. Pollak, Office of Corporation Counsel, District of Columbia, Washington, DC, Laurie Pouzzner McManus, Arlington, VA, for District of Columbia, et al., Defendants.

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

On September 4, 2003, the parties in this litigation filed a proposed consent decree that they represented was a fair, reasonable and adequate resolution of these lawsuits. *See* Joint Motion for Preliminary Approval of Consent Decree at 1. The parties jointly requested that the Court issue an order granting preliminary approval of the proposed decree and schedule a fairness hearing. *See id.* This Opinion addresses the joint motion for preliminary approval of the proposed consent decree and several related matters, including the intervention of the District of Columbia Office of Administrative Hearings in the above-captioned *Blackman* matter.

## I. BACKGROUND

Prior to the filing of the parties' joint motion for preliminary approval of the proposed consent decree, the District of Columbia Office of Administrative Hearings ("OAH") moved for leave to intervene in these actions for the purpose of partici-

pating in the ongoing settlement discussions. The OAH asserted that as the newly-created central administrative tribunal for all District of Columbia agencies, it will assume responsibility for all special education hearings, and thus it has a right to take part in the formulation of a consent decree that concerns such hearings. *See* Motion of the District of Columbia Office of Administrative Hearings for Leave to Intervene ("OAH Mot.") at 1–2. Specifically, the OAH charged that the current draft of the consent decree, if adopted, "would divest OAH of the ability to manage and control its own docket independently, without interference from adversaries litigating within the special education system (the District of Columbia Public Schools ('DCPS'), special education petitioners and their respective counsel)," in violation of District of Columbia law. *Id.* at 2.

In an Order dated June 2, 2003 addressing the OAH's motion, the Court noted that it did not understand why the OAH, like DCPS and all other District of Columbia agencies and entities, is not properly and adequately represented by the Office of the Corporation Counsel ("OCC") in the settlement negotiations, notwithstanding any authority of the OAH to retain its own counsel when it brings suit or is sued under D.C.Code § 1831.05(b)(10) (2002). In so noting, the Court stated that:

> If OAH is in fact the new home for administrative due process hearings for special education, it necessarily will be affected by the parties' agreement, because any acceptable settlement must include specific time frames for the holding of the administrative due process hearings and due process hearing officer and/or administrative law judge decisions. While OAH asserts that the Corporation Counsel has not represented OAH's interests, such an assertion strikes the Court as being a matter for

internal resolution within the District of Columbia government itself *before* any settlement proposal is presented to the Court—if necessary by the Mayor himself—not for this Court. Someone must speak for the District of Columbia government as a whole which is, after all, the named lead defendant in this class action.

*Blackman v. District of Columbia,* 265 F.Supp.2d 51 (D.D.C.2003) ("June 3 Order"). The Court ordered the OCC to file a response to the OAH's motion to intervene, setting forth "with precision the position of the Mayor, the District of Columbia government, the District of Columbia Public Schools, and the Office of the Corporation Counsel with respect to the proposed intervention in this matter by the District of Columbia Office of Administrative Hearings." *Id.*

By separate filings, the OCC; the defendants in the case—the District of Columbia, DCPS, the Superintendent of DCPS and the Director of Special Education Services for DCPS; and the OAH advised the Court that they could not speak with a single voice. To the Court's amazement, the OCC stated that "it would not be appropriate for the OCC or any other office of the D.C. government, including the Mayor and the Corporation Counsel, to control or direct the OAH in the performance of its adjudicatory functions," and therefore that the OCC did not oppose the motion of the OAH to intervene. Response of the Office of the Corporation Counsel to Order of June 2, 2003, and to Motion to Intervene of Office of Administrative Hearings at 3–4. The OAH filed its own response in which it heralded its "independent authority to continue to schedule due process hearings in special education cases" and opposed "ceding control" over scheduling and holding timely due process hearings to DCPS. Response

of the Office of Administrative Hearings to Plaintiffs' Surreply to Motion to Intervene at 5–6. As the Court noted in its August 22, 2003 Memorandum Opinion: "[M]ost of the pages of the briefs filed with respect to [the OAH's] motion to intervene discuss District of Columbia law and read like an internal fight between siblings. No party, however, has devoted much effort to discussing the law that actually governs this case ... the [Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA") ]." *Blackman v. District of Columbia,* 277 F.Supp.2d 89 (D.D.C.2003) ("August 22 Opinion").

In the August 22 Opinion, the Court directed the parties to brief the question of whether under the IDEA, only DCPS can fulfill its statutory obligation both to provide and to conduct the administrative due process hearings required by the IDEA, or whether that responsibility effectively may be transferred by the Council of the District of Columbia through legislation, or by any other authority, from DCPS to an independent District of Columbia agency such as the OAH. The Court asked the parties to survey the states in which such hearings are conducted by an agency other than the state or local educational agency as defined by the IDEA. To assist in its analysis of these issues, the Court appointed John Payton of the firm of Wilmer, Cutler & Pickering as *amicus curiae* to file "a true friend of court brief unaligned with any party or prospective party." The Court also directed the OAH to file a brief and invited the Office of the Corporation Counsel for the District of Columbia and the Council of the District of Columbia to submit briefs as well.[1] After considering all of the briefs filed with respect to the authority of the OAH to conduct hearings under the IDEA, as well as those filed in connection with the intervention motion, the Court granted the OAH's motion to intervene on March 29, 2004.

Several pertinent events have occurred since briefing on these issues was completed. First, on November 4, 2003, District of Columbia Bill 15–571 was introduced in the Council of the District of Columbia. The bill's purpose is "to clarify that the [OAH] shall not have mandatory jurisdiction to hear District of Columbia Public Schools administrative cases, which jurisdiction threatens to impair the independence of the Office." Plaintiffs' Notice of Pending Legislation, Ex. 1, D.C. Bill 15–571 at 1. The proposed legislation would repeal those sections of the OAH statute that provide for mandatory jurisdiction over special education administrative hearings and for the transfer of a portion of the DCPS budget to the OAH. *See id.*

Second, on December 2, 2003, the Council passed D.C. Bill 15–275, which was emergency legislation that removed special education hearings from the exclusive jurisdiction of the OAH for a period of 90 days, ending on March 17, 2004. *See* Office of Administrative Hearings' Notice Regarding D.C. Bill 15–571, D.C. Act 15–275 and D.C. Bill 15–560[sic] at 1. Third, that same day the Council also passed a resolution that expressly referenced the *Blackman* litigation and stated the Council's intent to remove IDEA due process hearings from the mandatory jurisdiction of the OAH on a more permanent basis "in order to preserve the independence of the [OAH]" and to ensure that funds budgeted for special education administrative hearings remain in DCPS's budget. *Id.,* Ex. 2,

---

1. The Court expresses its gratitude to *amicus curiae* John Payton and his colleague Maya Alexandri for the excellent and extremely helpful *amicus curiae* brief they submitted in this matter. They have performed a service to the Court and to the government of the District of Columbia and have acted in the best traditions of the Bar.

D.C. Resolution 15–356. Fourth, on January 6, 2004, the Council "passed on a second reading D.C. Bill 15–580," entitled "Office of Administrative Hearings Independence Preservation Temporary Act of 2003," which mirrors emergency D.C. Bill 15–275, and, if approved by the Mayor, would extend the effect of D.C. Bill 15–275 for 225 additional days from the date of enactment. *See id.* at 1–2. Neither D.C. Bill 15–571 nor D.C. Bill 15–580 has yet been enacted, however, leaving the OAH statute intact.

## II. DISCUSSION

### A. *Permissible Role for the OAH*

■ In deciding to grant the motion of the OAH to intervene, the Court first concluded that the creation of a central hearings panel to conduct administrative hearings for a municipality, including the administrative due process hearings required by the IDEA, is permissible under the IDEA and, if properly constituted, such a centralized hearings panel can be consistent with the IDEA. Specifically, the plan creating the OAH, as embodied in the legislation passed by the Council of the District of Columbia to transfer its IDEA due process hearings from DCPS to the OAH is presumptively compliant with the IDEA. *See Aiello v. Grasmick*, 155 F.3d 557, 1999 WL 394175 at *9 (4th Cir.1998); *Cavanagh v. Grasmick*, 75 F.Supp.2d 446, 459 (D.Md.1999); *Mr. X v. New York State Education Department*, 975 F.Supp. 546, 553–54 (S.D.N.Y.1997). *See also* Brief of Amicus Curiae John Payton Pursuant to the Court's August 22, 2003 Order ("Amicus Br.") at 37–40, and Attachment: "Survey Data about the Fourteen States that Use Central Hearings Panels to Conduct IDEA Hearings" (detailing state and municipal use of central hearing panels to conduct IDEA due process hearings).

Notwithstanding this conclusion that the OAH may have the authority to conduct due process hearings for DCPS during some or all of the time period covered by the consent decree (depending on the ultimate fate of D.C. Bill 15–571 and D.C. Bill 15–580), the Court also concluded that DCPS ultimately is the responsible entity under the IDEA for the implementation of the IDEA, for compliance with its 45–day hearing and decision requirement, and for the procedural fairness of any due process hearings conducted. *See* 20 U.S.C. §§ 1412(a)(11)(A), 1415(a)-(h); 34 C.F.R. §§ 300.509, 300.511; *Mr. X v. New York State Education Department*, 975 F.Supp. at 553–54 (New York State Education Department ("SED") still responsible for and subject to liability for determinations of independent State Review Officer ("SRO") because SRO decisions are made on behalf of SED); *see also Petties v. District of Columbia*, 894 F.Supp. 465, 466–67 (D.D.C.1995). As the court stated in *Mr. X*, "[t]he parent does not stop being aggrieved by the final decision," or by the failure to issue a final decision, merely because a central hearings authority rather than a state education agency hearing officer now will render that decision. *Mr. X v. New York State Education Department*, 975 F.Supp. at 553 (internal quotations omitted).

While D.C. Bill 15–571 eventually may resolve any questions regarding the OAH's *mandatory involvement* in IDEA administrative due process hearings, and D.C. Bill 15–580 affirmatively may remove IDEA due process hearings from the OAH's jurisdiction for a seven and one-half month period, neither piece of legislation has been enacted, and the Court cannot make a decision about the OAH's intervention based on a contingency. Moreover, no party was prepared to assure the Court that notwithstanding any legislation that

might be enacted (or lack thereof), a single entity, either DCPS or OAH, would be the responsible for IDEA administrative due process hearings for the entire life of the consent decree if it were approved. The Court therefore concluded that both DCPS and the OAH must be defendants in this case and both must be signatories to any consent decree that effectuates the settlement of *Blackman v. District of Columbia,* Civil Action No. 97–1629.[2]

The Court cautions the OAH that if at some point the OAH does conduct administrative due process hearings under the IDEA either because it is required to do so or is permitted to do so by local law, it will be bound by all provisions of the IDEA with respect to the procedural requirements for such due process hearings and all other relevant terms of the IDEA, specifically and most importantly including the requirement that all hearings must be conducted and all decisions must be rendered within 45 days of a request for an administrative due process hearing under the IDEA. *See, e.g.,* 34 C.F.R. § 300.511(a); *Walker v. District of Columbia,* 157 F.Supp.2d 11, 30 (D.D.C.2001); D.C. MUN. REGS. tit. 5, § 3030.1. Furthermore, the OAH will be bound by all earlier and subsequent decisions rendered in the *Blackman* case—including the

deadlines for the provision of hearings previously decreed—just as all original defendants in the case are bound. *See Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1017 (D.C.Cir.1985) ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party"); *District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132 (D.C.Cir.1985) ("the 'price' of [such] intervention ... is the possibility that the plaintiff will be able to obtain relief against the intervenor-defendant"); *Securities Industry Association v. Board of Governors of the Federal Reserve System,* 628 F.Supp. 1438, 1440 (D.D.C.1986) (the intervenor as of right "assumed the risk that it would not prevail and that an order adverse to its interests would be entered"). This is true whether these consolidated actions are settled and a consent decree is entered or the actions go forward to trial on the issue of remedy, resulting in a judgment of the Court after trial.[3]

### B. *The Proposed Consent Decree*

■ The cornerstone of any acceptable consent decree in these consolidated class actions must be an unequivocal commitment to providing timely due process hearings under the IDEA for the duration of

---

**2.** This conclusion does not necessarily require that the OAH be the entity that provides due process hearings on behalf of DCPS. As the OAH itself concedes, if DCPS "makes a careful and deliberate finding that conditions imposed by the Council in the OAH Act will not permit it to ensure federal IDEA compliance, its remedy under its unique IDEA responsibility is to elect to retain management in the Student Hearing Office" and to continue to conduct the administrative due process hearings. *See* Brief of the Office of Administrative Hearings in Response to August 22, 2003 Order at 9.

**3.** It is important to note that in its Order of March 24, 2004, the Court did not grant the

OAH leave to intervene in *Jones v. District of Columbia,* Civil Action No. 97–2402(PLF), the action consolidated with *Blackman v. District of Columbia,* Civil Action No. 97–1629(PLF). On May 14, 1998, the Court certified two subclasses in these consolidated class actions. The *Blackman* subclass consists of those persons who did not receive timely due process hearings. *See Blackman v. District of Columbia,* 185 F.R.D. 4, 5 (D.D.C.1999). The *Jones* subclass, on the other hand, includes those persons who were denied timely implementation of a hearing officer determination or settlement agreement. *See id.* Accordingly, OAH intervention in the *Jones* portion of these consolidated actions is neither necessary nor appropriate.

the consent decree. This necessarily includes a clear statement of what entity is responsible for providing these hearings and what entity is responsible for conducting them. It also must be clear who is accountable for any failures to comply with the procedural requirements of the IDEA, particularly the 45–day requirement the violation of which led this Court to grant summary judgment for plaintiffs on the issue of liability in the first place. The consent decree therefore must indicate not only what entity must conduct the hearings, but what individuals or entities the parents should sue if they fail to obtain a hearing and a decision within 45 days or for other procedural violations of the IDEA in connection with the due process hearings. The consent decree must be very clear on whom the Court should impose sanctions for failure to comply with the IDEA or the consent decree, whether those sanctions are contempt of court and/or monetary fines.[4]

By its terms, the consent decree effectively is open-ended; the decree is to remain in force until certain compliance criteria are met and both the *Blackman* and *Jones* actions are dismissed by the Court. *See* Consent Decree at 63. While the decree purports to govern both the DCPS Student Hearing Office ("SHO") and "any successor to the Student Hearing Office," *id.* at 10, that already-named successor, the OAH, had no role in the negotiation of the proposed consent decree. Although proposed D.C. Bill 15–571 would remove from the mandatory jurisdiction of the OAH the IDEA administrative due process hearings, presumptively returning the

hearings to the Student Hearing Office, and D.C. Bill 15–580 would remove the OAH from the process for a 225–day period, neither piece of legislation has been enacted. In the meantime, the proposed consent decree speaks only of DCPS and the SHO and not at all of the OAH. This is a fatal flaw. The Court will not approve a consent decree that does not clearly state who is in charge of seeing that its terms are implemented *for the entire life of the consent decree*—the OAH or DCPS.

The problems that result from the OAH's absence from the settlement negotiations and from the consent decree are evident. For example, the proposed consent decree commits the defendants to holding timely due process hearings. *See* Consent Decree at 13–18. A centerpiece of the decree is that the DCPS Special Education Student Hearing Officer Due Process Hearing Standard Operating Procedures ("SHO Procedures Manual"), a handbook for hearing officers, the local and state education agency's representatives, the parent/child representatives and the SHO staff will govern DCPS administrative hearings. *See id.* at 24–28. *See also* Joint Filing of Documents Referred to in the Proposed Consent Decree, Exhibit A, SHO Procedures Manual. What the decree does not indicate, however, is whether the SHO Procedures Manual will continue to have any force and effect (in whole or in part) if the OAH becomes responsible for hearings during any portion of the consent decree, or if the OAH will promulgate its own operating procedures. If the SHO Procedures are to be superseded, that matter must be resolved

---

4. By filing of February 17, 2004, the parties jointly informed the Court of steps that DCPS already has taken in order to implement certain provisions of the consent decree and provide timely due process hearings for DCPS students. *See* Joint Response to February 2, 2004 Report and Recommendations of the Special Master and Status Report. Such efforts do not eliminate the need for a clear designation in the proposed consent decree, however, of the entity responsible for the provision of IDEA due process hearings for the duration of the decree.

before, not after, a consent decree is approved. This and like concerns are issues that must be resolved in writing and articulated clearly and explicitly before, not after, a consent decree is approved.

The Court must consider the joint motion for preliminary approval of the consent decree within the context of DCPS's historical, institutional failure to comply with the spirit and letter of the IDEA and its requirement of timely administrative due process hearings and decisions. Approximately 17.5 percent of the total student population in the District of Columbia need special education services. *See* Amicus Br., Ex. 8, *A Time for Action: The Need to Repair the Sytem for Resolving Special Education Disputes in the District of Columbia,* D.C. Appleseed Center for Law and Justice and Piper Rudnick LLP (Sept. 12, 2003) ("Appleseed Rep.") at 16. 28 percent of DCPS's budget is spent on this relatively small percentage of students. *See id.* at 57 ($261.3 million of DCPS's total fiscal year 2003 budget of $935 million was spent on special education). Consistently, the number of formal due process hearings requested and held in the District of Columbia is much higher than anywhere else in the country. *See id.* at 16–17. In 2000–2001, for example, there were 2,402 requests for due process hearings in the District of Columbia, and 671 hearings were held while only 25 cases were resolved through mediation. *See id.* at 42. Nationwide—in the 50 states combined—there were 12,914 total requests for hearings and approximately 8,000 requests for mediation, and only 12 percent of all special education complaints were resolved by hearings. *See id.* at 42. There are 300 new requests for administrative due process hearings in the District of Columbia each month. *See id.* at 52.

Historically, special education administrative due process hearings for District of Columbia special education children have been held late or not at all. *See Blackman v. District of Columbia,* 185 F.R.D. 4, 5 (D.D.C.1999). In addition, educational placements ordered by hearing officers are not effectuated in a timely manner despite the implementation date that is included in each decision pursuant to 20 U.S.C. § 1414(d)(1)(A)(vi). *See id.* at 5–6; *Blackman v. District of Columbia,* Civil Action No. 97–1629, Opinion at 14 (D.D.C. June 3, 1998) (granting plaintiffs summary judgment as to liability for failure to implement hearing officer decisions within time frame set out in decisions); *see also* Appleseed Rep. at 21–22. Shockingly, an estimated one-third of all administrative due process hearings arise in the District of Columbia out of DCPS' failure to comply with a previous hearing officer's decision or failure to implement a settlement. *See* Appleseed Rep. at 28. In sum, the special education system is largely dysfunctional, *see id.* at 18, and no one seems to be in charge. This situation cannot continue.[5]

Put simply, the District of Columbia must speak with a single voice with respect to special education, whether it is the voice of the Mayor, the Council or the

---

5. In addition, 31 percent of DCPS special education students are referred to private placements as compared to three percent nationally. *See* Appleseed Rep. at 58. 34 percent of DCPS's special education budget ($92 million in fiscal year 2003) is allocated to private placements compared to 12 percent nationally, and 17 percent of the DCPS special education budget is spent on transportation to private placements as compared to seven per cent nationwide. *See id.* at 58. While these figures may be more relevant in the context of the *Petties* litigation than here, *see Petties v. District of Columbia,* 238 F.Supp.2d 88 (D.D.C.2002), the fact that more than 50 percent of the special education budget in the District of Columbia is spent on private placements and related services further underscores the dysfunction of the system.

Board of Education. The Court will not attempt to discern that voice from the cacophony of positions the defendants and the OAH have presented thus far. The Court also holds deep reservations about approving a proposed consent decree absent the express endorsement of the yet-to-be-named new Superintendent of Schools. The provision of timely due process hearings under the IDEA, and the education of special education students in the District of Columbia more generally, clearly should be top priorities for any new superintendent, and he or she must be fully committed to implementing any consent decree. Where the *buck stops* for special education decisions and for accountability for the implementation of the consent decree are matters "for internal resolution within the District of Columbia government *before* any settlement proposal is [approved by] the Court," not afterwards. June 3 Order at 3. The Court therefore will deny the parties' motion for preliminary approval of the consent decree. Accordingly, it is hereby

ORDERED that the Motion of the District of Columbia Office of Administrative Hearings for Leave to Intervene [1171–1] is GRANTED; it is

FURTHER ORDERED that the District of Columbia Office of Administrative Hearings is admitted as a party defendant in *Blackman v. District of Columbia*, Civil Action No. 97–1629(PLF) for all purposes; and it is

FURTHER ORDERED that the Joint Motion for Preliminary Approval of Consent Decree [1339–1] is DENIED.

SO ORDERED.